UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAUL WILKINSON,

        Plaintiff,

   v.

SEIU LOCAL 1199NW,

        Defendant.

CASE NO. C06-469C

ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. No. 11). Having considered Defendant's Motion and supporting declarations (Dkt. Nos. 12 and 13), Plaintiff's Opposition (Dkt. No. 14), and Defendant's Reply (Dkt. No. 15), the Court hereby rules as follows.

I.    Background

    *A.    Plaintiff's Employment at Swedish*

Plaintiff Paul Wilkinson is a former employee of Swedish Medical Center ("Swedish"). Plaintiff began working for Swedish in December 1999. (Dkt. No. 13 at 4.) SEIU 1199NW ("the union") is a statewide union of health care workers based out of Renton, Washington. (Dkt. No. 12 at 2.) It is the

ORDER – 1

exclusive bargaining representative for more than 18,000 health care workers at numerous health care facilities across Washington, and is the representative for technical employees who work for Swedish; Plaintiff was represented by the union during his employment with Swedish.  (*Id.*)  Swedish has a collective bargaining agreement ("CBA") with the union which provides that Swedish cannot discharge bargaining unit employees without cause.  (*Id.*)

Plaintiff alleges that his problems with the union began early in 2004.[1]  In January of 2004, Plaintiff contacted the union through Joanne Metropolis and attempted to file grievances regarding an improper low census incident ("LCD grievance") and a standby pay violation ("standby pay grievance").[2] (Dkt. No. 14 at 5-6.)  Despite a number of requests that the grievances be filed, the standby pay grievance was not filed until September of 2004.[3]  (*Id.* at 6.)  Plaintiff speculates that this delay in filing was due to Metropolis's bias against Plaintiff as a "grandfathered" member of the union.  (*Id.*)  In support

---

[1] Plaintiff's narrative-style opposition brief recites a litany of complaints about the conduct of both the Defendant union and his former employer.  Because the conduct of his employer is largely irrelevant to the question of whether the union breached its duty of fair representation, only the allegations Plaintiff makes as to the conduct of the union will be recited here.

[2] The CBA sets out a grievance and arbitration procedure for resolving alleged violations of the CBA. (Dkt. No. 12 at 2.)  Grievances related to termination are filed at "Step 2" of the grievance procedure and presented to the Department Director.  (*Id.*)  If such grievances are not resolved before the Department Director, they proceed to "Step 3" and are presented to the Human Resources Director. (*Id.*)  If the grievance is not resolved in Step 3, the union makes a determination as to whether to submit the grievance to arbitration.  (*Id.*)  The union does not arbitrate all grievances, but makes the determination as to whether to do so based on a variety of factors, including the likelihood that the grievance will merit relief in arbitration.  (*Id.* at 2-3.)
    If the union decides not to arbitrate a grievance, the grievant can appeal that determination to a chapter hearing board consisting of between three and seven union members elected by the chapter's delegates.  (*Id.* at 3.)  The chapter hearing board can affirm the decision of the union not to arbitrate or reverse the determination and send the case to arbitration.  (*Id.*)  If the grievant is dissatisfied with the decision of the chapter hearing board, she may appeal that decision to a district hearing and appeal board. This board consists of seven union members elected by the district delegate assembly.  Like the chapter hearing board, the district hearing and appeal board can affirm or reverse and send the grievance to mediation.  (*Id.*)

[3] Plaintiff does not provide any information as to whether the LCD grievance was ever filed.

ORDER – 2

of this, Plaintiff states, "Ms. Metropolis has informed me at our first meeting that she believed that I was 'not a real union member' and that by having the union represent me I was 'getting something for nothing.'" (*Id.*)  Plaintiff also criticized the union representative who represented him through most of the standby pay grievance process, Jeff Walker, for failing to use the documentation Plaintiff provided as to what settlement he was owed. (*Id.* at 7-8 ("After receiving the settlement offer from Swedish and the union in February of 2006, it was evident that this information had not been used at all by the union in the grievance process.").)  The standby pay grievance was settled in March 2006. (*Id.* at 6.)

In March of 2004, Plaintiff filed a grievance through Walker concerning an incident with his manager, Bonnie Robertson, in which he believed she had wrongfully deprived him of union representation.  Plaintiff states that an agreement was reached in which no disciplinary action would be taken against Robertson, but that a record of the incident would be kept in her manager files with Plaintiff's response "as to why I believed her judgment to be flawed." (*Id.* at 7.)  Plaintiff later found out that Robertson had not followed through on the agreement, and "the union had not made sure that she followed through." (*Id.*)

Plaintiff was terminated by Swedish on March 23, 2005, because of two incidents of alleged misconduct.  In the first incident, which occurred on March 5, 2005, Plaintiff made an inappropriate suggestion to a female co-worker that she should "make [her]self useful" and massage the feet of the male technicians who were present. (Dkt. No. 12 at 4, 12, 16.)  In the second incident, which took place on March 8, 2005, Plaintiff detained a female co-worker in a restroom against her will by blocking her exit until she screamed to be let out.[4]  (*Id.* at 3-4, 14, 15.)  Swedish determined that Plaintiff had violated

---

[4] The co-worker's account of the incident is as follows:

> Paul motioned to me to follow him around the corner. I felt as though we could talk with privacy at his station because the only other tech in the area was appropriately 20 feet away, however, I followed Paul around the corner. Paul was heading into the restroom between rooms 418 and 420, and again motioned me to follow him. I clearly stated to Paul that I was not going into the restroom. Paul was persistent in wanting to talk in the

ORDER – 3

Swedish's Employee Behavioral Standards, Workplace Violence Prevention, and Non-Discrimination policies. (*Id.* at 3-4, 12-13, 23-29.)

Plaintiff does not dispute that these incidents occurred. Indeed, he largely offers no alternative account of the events that led to his termination.[5]

B.      *Post-Termination Proceedings*

On the day of his termination, Plaintiff filed a grievance with the union alleging that the termination violated the just cause provision of the CBA, and seeking reinstatement and backpay. (*Id.* at 4, 31.) A Step 2 grievance meeting was held on April 7, 2005, at which Plaintiff was represented by union representative Jeff Walker. (*Id.* at 4-5.) Plaintiff argued that the March 8 incident was an accident and that he did not realize that his foot was holding the door closed. He also argued that he was actually being terminated in retaliation for criticism he had addressed to his manager, Robertson. On April 21, 2005, Plaintiff's grievance was denied, based on a finding that "your termination was not based on

---

> restroom, he continued to motion me towards him and verbally said "Just come in here." Against my better judgment, I went into the resroom [sic]. Before I could turn around, Paul had shut the restroom door. . . . I then told Paul that I was not going to stand here and listen to him tell me how to act. I then reached for the doorknob to open the door. Paul very quickly put his hand up against the door where the door meets the wall on the opening side. He shifted his stance so he could use his body weight to help hold the door closed. I immediately said "let me out Paul"; he continued to say, "listen." I repeatedly said, "Paul, let me out now!" I continued to raise my voice and speak in a more firm tone. I began pulling at the doorknob, and demanding that Paul let me out. I started to panic and realized that Paul was holding me against my will and that I no longer had control of the situation. At that point all I could see was his big arm and I started to scream. I can't recall if Paul finally released the hold he had on the door or if I was able to force open the door, but I left the restroom still screaming, heading quickly to the other side of the lab.

(Dkt. No. 12 at 14.)

[5] He raises minor factual disputes as to the details of the restroom incident. He contradicts Miller's declaration that Plaintiff is "over six feet tall" (Dkt. No. 12 at 7), and asserts that he is less than six feet tall. (Dkt. No. 14 at 4.) He also asserts that the co-worker he blocked from exiting the restroom did not scream. (*Id.* ("[T]here were no screams to be heard from the bathroom.").) Aside from these minor points, Plaintiff does not dispute the co-worker's account of the incident.

ORDER – 4

retaliation or prejudice but was based on the fact that an incident and interaction took place between you and your coworker, the nature of which was deemed inappropriate in the workplace." (*Id.* at 32.)

Around this time, Plaintiff requested that Walker obtain the personnel records of individuals who had been found to violate various Swedish policies but were not fired for their violations. Plaintiff states that "Mr. Walker never attempted to obtain these records to my knowledge." (Dkt. No. 14 at 8.) Walker also repeatedly assured Plaintiff that his grievance would be taken to arbitration and encouraged Plaintiff not to file a civil suit until the internal union grievance process was completed. (*Id.* at 8-9.)

Step 3 grievance proceedings commenced, and a meeting occurred on June 15, 2005 at which Plaintiff appeared with his personal attorney. Swedish declined to permit Plaintiff's personal attorney to appear at the meeting, so Walker attended on his behalf and relayed settlement offers back and forth between Swedish and Plaintiff. Plaintiff declined to settle at that time. (*Id.* at 5-6.)

At this time, the union was engaged in its own investigation of the termination in order to make the decision as to whether to submit the grievance to arbitration. On July 31, the union had not completed this review, but in order to preserve contractual timeliness, it notified Swedish that it was sending the grievance to arbitration. On the same day it notified Plaintiff that it had not decided whether or not to proceed with arbitration, but that it was submitting its intention to arbitrate to Swedish in order to preserve the right. (*Id.* at 6, 33.)

The union's investigation into the termination consisted of discussing the matter with Plaintiff and his attorney, interviewing witnesses to the incidents, and reviewing the management's investigation file and other documents. The union found that Swedish has a consistent practice of zero tolerance for incidents involving workplace violence and found no evidence that Plaintiff was treated differently than other employees who engaged in similar conduct. Walker ultimately recommended to the union's Staff Attorney, Geoff Miller, that the union not proceed to arbitration. The basis for Walker's recommendation was the perceived lack of merit of the grievance, the seriousness of the incidents that precipitated the termination, Plaintiff's relatively short tenure with Swedish, his previous disciplinary

ORDER – 5

incidents, and Swedish's consistent policy of zero tolerance for workplace violence. Walker did not believe that the union stood the slightest chance of prevailing in arbitration. (*Id.* at 6.)

Miller conducted an independent review of the termination and ultimately concurred with Walker's assessment of the grievance's chances of success. (*Id.* at 7.) His assessment was based on the seriousness of the restroom incident, the credibility of the female co-worker Plaintiff trapped in the restroom, Plaintiff's relative lack of credibility in explaining the incident as "an accident," and the lack of evidence that there was any improper motivation for the termination. (*Id.*) Accordingly, on September 19, 2005, Miller notified Plaintiff that the union would not be submitting the grievance for arbitration. (*Id.* at 33-34.)

Plaintiff appealed the union's decision not to pursue the grievance further on September 26, 2005, and requested a chapter hearing board proceeding. (*Id.* at 7-8, 35.) The hearing occurred on January 24, 2006, and on May 3, 2006, the three-member board issued an unanimous decision affirming the union's decision not to send the matter to arbitration. (*Id.* at 8, 36-47.) In a lengthy opinion, the hearing board found it "highly unlikely that the Union would prevail if it took Mr. Wilkinson's grievance to arbitration. This Board believes that the thorough investigation conducted by the Union correctly determined that going forward to arbitration on this claim would be a poor use of union resources because an arbitrator would likely affirm the decision of the Employer to terminate Mr. Wilkinson." (*Id.* at 37-38.)

Plaintiff finds fault with the union that the chapter board proceedings did not occur more expeditiously. A hearing was originally scheduled for November of 2005, but was postponed because a family member of a participant had died. (Dkt. No. 12 at 8; Dkt. No. 14 at 9.) Plaintiff requested the death certificate of the deceased family member, but Miller did not provide it. (Dkt. No. 14 at 9.) Plaintiff also states that despite assurances of more speed, Miller was dilatory in rescheduling the meeting, and that the chapter board was dilatory in issuing its decision. (*Id.*)

Plaintiff appealed the denial of the chapter board on May 18, 2006. (*Id.* at 8, 48.) The district hearing and appeal board convened on July 11, 2006. On August 21, 2006, it affirmed the decision of the

ORDER – 6

chapter board and the union not to send the grievance to arbitration. (*Id.* at 8, 49-50.)

On September 12, 2006, Plaintiff filed an unfair labor practice charge against the union with the National Labor Relations Board ("NLRB"). (*Id.* at 9, 51.) He alleged that the union had failed to adequately represent him in disputes with his employer, in violation of § 8 of the National Labor Relations Act ("NLRA"). (*Id.* at 51.) On November 18, 2006, the Regional Director of the NLRB declined to issue a complaint in Plaintiff's case. The Regional Director reasoned:

> There was insufficient evidence to support Charging Party Paul Wilkinson's allegation that the Union breached its duty of fair representation in the handling of his termination grievance. There was no indication that the Union has failed to consider Wilkinson's grievance for arbitrary, capricious or discriminatory reasons. Rather, the Union has investigated Wilkinson's grievance and decided not to pursue it further. I am, therefore, refusing to issue a complaint in this matter.

(*Id.* at 54.) Plaintiff further appealed this decision to the General Counsel of the NLRB. On January 13, 2006, the General Counsel affirmed the decision of the Regional Director, holding that Plaintiff failed to show that the union relied on "unlawful considerations" in declining to pursue arbitration on his grievance, and that Plaintiff also failed to show that his employer treated him differently from other employees engaged in the same conduct. (*Id.* at 55.) Thus, the General Counsel declined to find that the union had committed an unfair labor practice in violation of the NLRA.

While the chapter board was still deliberating, Plaintiff brought a complaint in King County Superior Court on March 3, 2006. The complaint alleged that the union was discriminatory and acted in bad faith in the pursuit of grievances, and that the union failed to enforce or support the collective bargaining agreement between Swedish Providence Medical Center and the union members. Defendant answered the complaint on March 23, 2006 (Dkt. No. 10), and then filed a Notice of Removal on April 3, 2006, removing the action to the United States District Court for the Western District of Washington. (Dkt. No. 1.) Plaintiff opposed the removal to federal court, but the Court found that federal jurisdiction was proper under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. (Dkt. No. 6.)

ORDER – 7

II.  Analysis

   A.   *Standard*

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions, and provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. *Anderson*, 477 U.S. at 248.  The moving party bears the burden of showing that there is no evidence which supports an element essential to the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In order to defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations, speculations or argumentative assertions that material facts are in dispute. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

Because Plaintiff is proceeding pro se, however, a slightly more lenient standard concerning the presentation of evidence is appropriate.  The Ninth Circuit has held that when reviewing a grant of summary judgment against a pro se plaintiff, it is appropriate to "consider as evidence in his opposition to summary judgment all of [the pro se plaintiff]'s contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the pro se plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (verified pleadings admissible to oppose summary judgment); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (verified motions admissible to oppose

ORDER – 8

summary judgment); *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995) (pleading counts as "verified" if the drafter states under penalty of perjury that the contents are true and correct)). Plaintiff has attested to the validity of his complaint under penalty of perjury. (Dkt. No. 1.) Plaintiff's brief in opposition to Defendant's motion for summary judgment is signed, but not sworn under penalty of perjury. Nor does Plaintiff submit an affidavit or declaration verifying the documents that he submits in support of his opposition. In the interest of judicial efficiency, however, the Court will overlook these procedural deficiencies and take the allegations in Plaintiff's opposition and supporting documentation as true solely for the purposes of this motion.

      *B.     Scope of Plaintiff's Complaint*

Plaintiff's complaint alleges that "SEIU Local 1199NW failed to act in good faith. The union was discriminatory in the pursuit of grievances. The union failed to enforce or support the contract with Swedish Providence Medical Center and members of the collective bargaining agreement." (Dkt. No. 1 at 3-4.) This claim clearly alleges that the union breached its duty of fair representation, a duty implied from the National Labor Relations Act. *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164-65, 165 n.14 (1983). This duty is a necessary protection for union workers in a system which provides exclusive bargaining authority to a union and thus deprives individual workers of the ability to bargain on their own behalf. *Id.* Under the duty of fair representation doctrine, "the exclusive agent's statutory authority to represent all members of a designated union includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion in complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). Plaintiff's complaint plainly makes out an allegation that the union breached this duty.

In the usual case, a claim that a union has breached its duty of fair representation is accompanied by a claim that the employer breached the collective bargaining agreement under § 301 of the Labor Management Relations Act. These are commonly referred to as "hybrid" claims. *See, e.g.*, *Bliesner v. Communication Workers of America*, 464 F.3d 910, 911 (9th Cir. 2006). Defendant argues, without

ORDER – 9

explanation, that Plaintiff presents a hybrid claim—"Plaintiff's complaint is that the Union breached its duty of representation with respect to a matter covered under a CBA, i.e., the just cause provision. Consequently, plaintiff's claim is a hybrid fair representation/§ 301 claim." (Dkt. No. 11 at 19.) Plaintiff has not sued Swedish, however, and does not make any allegations in his complaint as to his former employer's conduct. Moreover, Plaintiff's opposition plainly anticipates a separate suit against Swedish. (Dkt. No. 14 at 1 ("Time periods have forced me to file this lawsuit before the one that will be filed against Swedish Providence Medical Center.").) Though separately filing the claims against the union and the employer is uncommon, Defendant has presented no authority to suggest that it a breach of duty of fair representation claim cannot be considered alone. Indeed, there is authority to the contrary. *See Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 83 (1989) ("[A] suit against the union need not be accompanied by an allegation that an employer breached the contract, since whatever the employer's liability, the employee would still retain a legal claim against the union. . . . Federal courts have jurisdiction to hear fair representation suits whether or not they are accompanied by claims against employers."). Thus, the Court sees no reason to construe Plaintiff's complaint to include a claim that Swedish violated the CBA.

  C. *Time Bar*

  In general, actions for breach of the duty of fair representation are subjected to the six month statute of limitations found in § 10(b) of the NLRA. *DelCostello*, 462 U.S. at 171. At least one court has concluded that the *DelCostello* analysis does not apply in the case of a stand-alone breach of duty of fair representation claim. *Bullock v. Dressel*, 435 F.3d 294 (3rd Cir. 2006). In *Bullock*, Plaintiffs sought review of the district court's grant of summary judgment to the Defendant union on statute of limitations grounds. Plaintiffs had brought two claims against the union—one for breach of the duty of fair representation, and the other under § 101(a)(5) of the Labor Management Reporting and Disclosure Act ("LMRDA"). The district court, following *DelCostello*, subjected their claims to the six-month statute of limitations set out in § 10(b) of the NLRA. The Third Circuit concluded that the district court erred in

ORDER – 10

applying the six-month statute of limitations and should have applied the most closely-analogous statute of limitation under state law.  "[I]n *Brenner [v. Local 514*, 927 F.2d 1283, 1295 (3rd Cir. 1991)], we held that § 10(b)'s six-month limitations period does not apply to a DFR claim against a union when asserted without a corresponding claim against an employer for breach of collective bargaining agreement because the federal 'interest in the rapid resolution of labor disputes does not outweigh the union member's interest in vindicating his rights, when . . . a dispute is entirely internal to the union.'" *Bullock*, 435 F.3d at 300.  *Bullock*, of course, is not binding on this Court, and Plaintiff does not argue that *DelCostello* should be narrowed in this way.  Moreover, the Court has found no indication that the Ninth Circuit has followed the Third Circuit's reasoning in *Bullock*, even when faced with a claim of breach of duty of fair representation that is not coupled with a claim of breach of the CBA (i.e. a non-hybrid claim). *See, e.g.*, *Kalombo v. Hughes Market, Inc.*, 886 F.2d 258 (9th Cir. 1989).  Thus, the Court will apply the six-month statute of limitations set out in *DelCostello*.

       Plaintiff is largely barred from claiming that the union's handling of the LCD and standby pay grievances was a violation of the duty of fair representation.  The six-month statute of limitations begins to run once the employee knows or should know of the union action that is the basis of the claim of breach of the duty of fair representation.  *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986). Plaintiffs mentions several failings of the union in connection with the LCD and standby pay grievances. First, Plaintiff notes that when he first discussed these grievance with Metropolis in January of 2004, she expressed bias against him as a "grandfathered" union member.  Second, he notes that the grievances were not filed as quickly as he wanted them to be.  Third, he expresses dissatisfaction with Walker's failure to use the materials he provided as to the amount he was owed for the standby pay grievance.

       Of these various failings of the union with respect to the LCD and standby pay grievances, only the last is not time-barred.  Metropolis's biased comment was made in January of 2004.  (Dkt. No. 14 at 6.)  Plaintiff learned of Metropolis's failure to file the grievances as he requested in September of 2004. (*Id.*)  Plaintiff's last complaint—that Walker failed to use the materials he provided in support of his

ORDER – 11

1  standby pay grievance—did not become clear to him until February of 2006, when he received a
2  settlement offer on the standby pay grievance. (*Id.* at 7-8.) Thus, Walker's failure to use the materials
3  Plaintiff prepared for him is the only union action relating to the standby pay and LCD grievances that is
4  not time-barred from consideration.

        *D.*        *Duty of Fair Representation*

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190. A union acts in bad faith when "it acts with an improper intent, purpose, or motive"; conduct in bad faith includes fraud, dishonesty, and other intentionally misleading conduct. *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998). Moreover, a union is only arbitrary if its behavior is "so far outside a 'wide range of reasonableness,' as to be irrational." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). Mere negligence or poor judgment on the part of the union is insufficient under this standard. *United Steelworkers of America v. Rawson,* 495 U.S. 362, 372-373 (1990).

A union member has no absolute right have his grievance taken to arbitration. *Vaca*, 386 U.S. at 191 ("Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement."). The Ninth Circuit has set specific standards for determining if a union's failure to pursue a grievance through the final step of the grievance procedure is a breach of the duty of fair representation.

> In determining whether a union handled a grievance arbitrarily . . . , we consider whether the union: (1) has deliberated the alleged meritorious argument, and (2) can provide an explanation for its decision not to pursue the argument. . . . In addition, in accordance with the broad discretion traditionally owed to unions, we do not scrutinize the quality of the union's decision.

*Slevira v. Western Sugar Co.*, 200 F.3d 1218, 1221 (9th Cir. 2000).

Even accepting all of Plaintiff's allegations as true, he fails to raise a genuine issue of material fact

ORDER – 12

as to the union's arbitrariness, bad faith, or discrimination. Aside from the biased comment made by Metropolis that is time-barred from consideration, Plaintiff presents no direct evidence that the union was biased against him, or discriminated against him, or was arbitrary in its pursuit of Plaintiff's grievances. Instead, he raises a series of complaints about the union's handling of his grievances and concludes:

> If the union failed me once it would be a fluke. If the union failed me twice it would be unusual. If the union failed a third time it would be considered a pattern of behavior. But four or more times shows a definite bias and discrimination on the part of the union.

(Dkt. No. 14 at 11.) The Court disagrees.

Plaintiff's complaints about the union's conduct are as follows:

(1) the union failed to get him a settlement for what he felt he was owed on the standby pay grievance due to the failure of union representatives to utilize the materials he provided showing what he was owed;

(2) the union failed to do enough investigation to show that other employees at Swedish who committed acts similar in seriousness to Plaintiff's termination offense were not fired;

(3) the union failed to ensure that Plaintiff's manager, Robertson, keep a record of a particular incident in her manager files, as Plaintiff and Robertson had agreed;

(4) the union failed to interview witnesses Plaintiff felt were important to explaining the context of his termination offense;

(5) Plaintiff's union representative, Walker, made assurances that the union would take his termination grievance to arbitration, though it ultimately did not;

(6) the union did not proceed in a sufficiently expeditious manner in getting Plaintiff's termination grievance before the chapter board, and Miller did not provide the death certificate of the family member whose death resulted in the rescheduling of the chapter board meeting.

These allegations, even if properly supported, are insufficient to raise a factual question as to the union's alleged bad faith, arbitrariness, or bias. Moreover, Plaintiff offers no external evidence support his charge of bias on the union's part. He has submitted a large amount of documentation, which the Court has thoroughly reviewed, but none of this documentation lends support to his claim of union bias. Indeed, much of it appears slanted to supporting his belief that he was wrongfully terminated by Swedish.

ORDER – 13

Though Plaintiff is not happy with the outcome, the evidence shows that the union acted on his termination grievance with ample diligence. Plaintiff was terminated in large part for an incident in which he kept a fellow employee in a restroom against her will, an incident Swedish rightly perceived as being quite serious. (Dkt. No. 12 at 14.) Despite this, the union assisted Plaintiff in obtaining review of the grievance through several stages of grievance proceedings, representing Plaintiff at meetings and conducting an independent investigation into the incident. Plaintiff was unable to obtain the relief he sought during step 2 and step 3 stages of the grievance proceedings.[6] At that point, the union determined not to take the grievance to arbitration, concluding that the union and Plaintiff had not the slightest chance of prevailing at arbitration. Though Plaintiff appealed this decision to the chapter board and the district hearing and appeal board, all concluded that the union's refusal to take the grievance further was reasonable. Plaintiff sought further review by filing an unfair labor practice charge with the NLRB. The Regional Director refused to issue a complaint, finding "no indication that the Union has failed to consider Wilkinson's grievance for arbitrary, capricious or discriminatory reasons." The General Counsel of the NLRB made the same conclusion after Plaintiff appealed the Regional Director's determination.

In sum, Plaintiff has presented his claim against the union to four separate bodies—the chapter hearing board, the district hearing and appeals board, the Regional Director of the NLRB, and the General Counsel for the NLRB. The unanimous conclusion of these four bodies was that the union did not act in bad faith, arbitrarily, or based on bias or discrimination in refusing to take Plaintiff's termination grievance to arbitration. Instead, these bodies held that it was reasonable for the union to conclude that arbitration would be fruitless given the seriousness of Plaintiff's termination offense and other factors. The Court has been presented with no evidence to suggest

---

[6] Plaintiff rejected a settlement offer made by Swedish during step 3 proceedings. (Dkt. No. 12 at 5.)

ORDER – 14

that these four conclusions were incorrect. Moreover, Plaintiff has admitted that he has no reason to believe that any of the members of the chapter board or the district hearing and appeals board were biased against him in any way. (Dkt. No. 13 at 13-14.) In short, Plaintiff has raised no genuine issue of material fact that the union acted arbitrarily, in bad faith, or due to bias or discrimination.

III.  Conclusion

Defendant's Motion for Summary Judgment is GRANTED. The order constitutes an adjudication on the merits and is with prejudice.[7]

SO ORDERED this 4th day of January, 2007.

_____
John C. Coughenour
United States District Judge

---

[7] Defendant moves to strike various portions of Plaintiff's brief and attachments. This motion is DENIED. The Court considers the disputed documents only as they are relevant to this dispute and for admissible purposes.

ORDER – 15